[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGE'S ORDERS
THE COURT: This is a matter in which the Court previously heard evidence and took the papers and the Court is issuing its decision today. The Court will order a copy of the transcript of the decision portion which the Court intends to sign which will serve as the memorandum of decision. I will inform counsel that I intend to give you for your convenience a copy of the orders that I am reading from so you will not have to scribble furiously as I give the order. However, I want to make it clear that the orders contained in the transcript which is going to be signed by the Court will be the final orders.
Having heard the evidence the Court finds it has jurisdiction over this matter. One of the parties has resided in the state for at least one year prior to bringing the action.
The parties were married on July 18, 1996 in Orlando, Florida.
There are two minor children issue of the marriage; James Richard Bolles, born January 24, 1997, and Mary Ava Bolles, born December 10, 1999. No other minor children have been born to the wife since the date of the marriage and neither party has been the recipient of public assistance.
The marriage has broken down irretrievably.
The plaintiff husband is 43 years of age, in good health and has a high school education. He is employed as a warehouse manager and in 2002 his gross wages were $76,492, and his average weekly gross wage was $1,471.
The Court concludes voluntary nontaxable IRA contribution should be included in the gross income.
He has a second occupation as a master cabinet maker and from this occupation the Court finds he has an earning capacity of $20,000 per year CT Page 2478-ad or $325 a week.
He has in-kind compensation in the form of a business vehicle which is valued at $35 a week.
This is his second marriage and he has three children from his first marriage for whom he pays child support in the amount of $277 per week.
He has an IRA accumulated during the marriage in the amount of $34,451.
The sole liability on his financial affidavit is for attorneys fees in the amount of $4500.
The defendant wife is 38 years of age and she is in good health. This is her first marriage. She is a registered nurse and she has her bachelor's degree. She has also completed courses towards a master's degree. She has also attained a juris doctors degree and passed the Connecticut Bar. She is presently employed as a nurse at Bristol Hospital where she is able to earn between $30.75 an hour to $35.75 an hour, depending on the shift she works.
The Court finds that as a nurse she has an earning capacity of at least $984 per week based upon 32 hours at $30.75. This equates to $51,168 a year.
Presently, the defendant has gross income from nursing of $238 per week. Her liabilities consist of credit card debt in the total amount of $9,240.
In September of 2002 in violation of the automatic orders the defendant withdrew $6,000 from a C.D. which is jointly owned with the plaintiff and she spent it. This impermissible withdrawal will be considered in formulating the Court's orders.
The defendant has an IRA accumulated during the marriage in the amount of $1,850. She also owns an interest in the home in Waterbury which the Court concludes has a nominal value. She does retain this asset.
The defendant owns a diamond ring given to her by the plaintiff which costs $12,000.
The defendant incurred substantial student loan debt which obtaining her JD. All of that student loan debt, approximately $98,000, was paid off during the marriage. CT Page 2478-ae
The parties have jointly owned assets. They are a 1998 Dodge Durango that has a value of $15,000, and a jointly owned C.D. that has a balance of $14,500.
The marital home located at 120 Boston Post Road, Old Lyme, was purchased by the plaintiff with his first wife in 1986. The plaintiff subsequently acquired his first wife's interest in the property.
Based upon the testimony of Mr. Blair, the Court finds that on the date of the subject marriage the home had a value of $267,500. At the time of this marriage it was encumbered by a mortgage to the plaintiff's mother in the original amount of $94,261.
During the marriage the parties received annual monetary gifts from the plaintiff's mother. Approximately $80,000 of this gift money was used to reduce this premarital mortgage.
The parties stipulate that the marital home has a present value of $475,000. The property is presently encumbered by the first mortgage in the amount of $145,068 and a home equity loan of credit on the mortgage that has a credit limit of $155,000. The line of credit has a principal balance of $36,918. This line of credit balance includes money borrowed for the purchase of the Dodge Durango, the defendant's diamond ring and counsel fees for both parties.
Each party blames the other for the breakdown of the marriage. The Court finds they bear equal responsibility for the breakdown. In this marriage the parties were burdened by the Defendant's law school obligations, the plaintiff's obligations to the cabinet making business, the demands of very young children and financial pressures. Their commitment to the marriage was not strong enough to withstand the strain of these issues.
To their credit the parties have entered into a stipulation regarding the custody and visitation of the minor children. This stipulation was approved by the Court on January 14, 2003. The Court informed the parties that it intended to incorporate the stipulation as final orders in this judgment.
In summary, the parties have joint legal custody of the minor children. The primary residence of the children is with the defendant mother, and the plaintiff has liberal rights of visitation.
The Court has utilized FIN PLAN to determine the plaintiff's child CT Page 2478-af support obligation and a copy of the prepared guideline worksheet has been provided to counsel and is made a part of the file.
The Court has given the plaintiff the filing status of single and the defendant is given the head of household status. Each party is awarded one child as a dependant.
To the plaintiff the Court attributed his gross weekly income from primary employment of $1,470 a week; his in kind contribution of $35 a week and his cabinetmaking income of $385 a week.
Historically, the plaintiff has not declared this income, but for the purpose of this order the court assumes that the cabinet making income will be included in his reported taxable income. If the plaintiff fails to declare his cabinetmaking income in the future, that is a matter to be considered in any future provisions to modify the financial orders.
The Court finds the plaintiff's net weekly income after payment of his prior support obligation of $277 per week to be $1,036. The Court has chosen to use the Defendant's present income of $238 a week for the FIN Plan calculation. The changes in the income of either party can be considered if either party seeks modification of the order.
The Court finds the defendant's net income to be $224 per week. The recommended child support obligation according to the guidelines is $288 per week.
The Court has considered the provisions of 46b-82 regarding alimony and concludes that the defendant wife is in need of financial support from the plaintiff. This support will allow the defendant to transition from part time to full time employment and will allow her to care for the youngest child until the child enters school. The plaintiff is to pay alimony in the amount of $150 per week for three years.
With regard to the assignment of property, the Court has considered the provisions of Connecticut General Statute 46-b-81. After weighing the evidence of the claims of the parties to the marital home, the Court finds that the plaintiff's contribution to the acquisition and improvement of the property tipped the scale on his side. The Court will assign to him the marital home, however, he will not receive all the equity.
Having considered the defendant's non monetary contributions to the marriage, the depreciation and value of the real estate, the increase in indebtedness against the marital home that occurred during the marriage, CT Page 2478-ag the money gifts to the parties that reduced the premarital mortgage balance, the payoff of the defendant's loans during the marriage and the utilization of the line of credit proceeds, the Court concludes that the defendant should receive the sum of $50,000 upon the transfer of her interest in the home to the plaintiff.
As to the bank account and IRAs, there was $20,500 in the joint C.D. before the defendant's impermissible withdrawal. The defendant's IRA has a value of $1,850 and the plaintiff's IRA has a value of $34,451, for a total for these assets of $56,809, rounded to $56,800. This sum should be shared equally by the parties so that each should receive $28,400.
The defendant has received $6,000 by way of her impermissible withdrawal, and she is to retain her IRA in the amount of $1,858. She is also to receive the balance remaining in the C.D. in the amount of $14,500. These assets total $24,216.
The plaintiff is to transfer the sum of $4,184 in his IRA to the defendant's IRA to equalize the parties' shares in these assets.
As part of the property assignment the defendant is to retain the 1998 Dodge Durango and the diamond ring the plaintiff gave her.
The Court enters the following orders:
The marriage is dissolved on the grounds of irretrievable breakdown. The stipulation regarding custody and visitation of the minor children dated January 13, 2003 signed by the parties is incorporated by reference and made an order of the court.
The plaintiff shall pay child support in the amount of $288 per week to commence when the defendant vacates the marital home as provided below. The parties shall pay for the unreimbursed medical expenses and child care expenses for the minor children in accordance with the child support guidelines in the following percentages: The plaintiff, 59 percent and the defendant, 41 per cent.
The plaintiff shall provide health insurance for the minor children as available at his employment. In the event the plaintiff is unable to provide health insurance for the minor children, the defendant is to provide such insurance as provided through her employment.
In the event neither party is able to provide health insurance for the minor children through their employment, then both parties shall cooperate in obtaining Husky coverage and they each shall pay one-half of CT Page 2478-ah the premium.
To facilitate any further reference to these orders, I am going to begin numbering them. There were four previous orders.
Order number 5, the defendant shall claim James as a dependant and the plaintiff shall claim Mary as a dependant.
Six, the plaintiff is to pay alimony to the defendant in the amount of $150 a week for a period of three years to commence when she vacates the family home. This award of alimony shall be nonmodifiable as to term.
The defendant's gross income from his employment shall not be grounds for modification of alimony unless it exceeds $50,000 per year.
The alimony shall terminate upon the remarriage of the defendant or upon the death of either party.
Seven, the plaintiff is to cooperate with the defendant to obtain COBRA benefits for her if she seeks them. The cost of said benefit is to be the defendant' s responsibility.
Eight, within sixty days of judgment the plaintiff shall pay the defendant $50,000 for a property settlement and contemporaneous with that payment the defendant shall quitclaim her interest in the marital home located at 120 Boston Post Road, Old Lyme, Connecticut to the plaintiff.
The plaintiff shall hold the defendant harmless from any and all liabilities in connection with the encumbrances upon the property. If the plaintiff is unable to make the payments of $50,000, the property is ordered to be sold and the defendant is to receive $50,000 from the proceeds. The Court retains jurisdiction over the matters pertaining to the sale of the family home.
Nine, the defendant is permitted to occupy the premises up to sixty days after the date she receives the $50,000 property settlement from the plaintiff.
The order for child support and alimony shall commence and become effective when the defendant vacates the marital home. Until defendant vacates the marital home, the pendente lite orders shall continue in effect.
Ten, the plaintiff is to transfer $4,184 from his IRA to the defendant's IRA within thirty days. CT Page 2478-ai
Eleven, the plaintiff is to release his interest in the joint C.D. in the amount of $14,500 to the defendant within thirty days. Any remaining balance in the C.D. is to be divided equally between the parties.
Twelve, the plaintiff is to transfer his interest in the 1998 Dodge Durango to the defendant within ninety days.
Thirteen, the defendant shall retain the diamond ring the plaintiff gave her.
Fourteen, the parties are to mutually divide the contents of the marital home to their mutual satisfaction. If they are unable to agree on a distribution, the matter is referred to family relations for mediation. The Court retains jurisdiction over this matter.
Fifteen, except as provided for here, each party is to retain the assets shown on their respective financial affidavits. This order does not affect ownership of the custodial accounts shown on the plaintiff's affidavit.
Sixteen, each party is to be responsible for the liabilities shown on their respective financial affidavits and are ordered to hold the other party harmless from said liability.
Seventeen, each party is responsible for their own counsel fees.
Attorney Quinn, does your client have any request with respect to her name?
MR. QUINN: I think she chooses to maintain the name of Bolles. That is what I recall. I want to make sure.
MS. BOLLES: Yes.
THE COURT: I will give the parties the opportunity to request any clarifications of these orders at this time, and this request is without prejudice to either party to file any motions allowed under the Practice Book, but my goal is to have the parties walk out of here without any immediate question as to the Court's orders. If you wish to —
Are there any questions at this time regarding the order, or would you like the opportunity to discuss with your clients and I will come back out. CT Page 2478-aj
(Recess Taken)
THE COURT: Attorney Douglas, any clarification requests?
MS. DOUGLAS: Yes. I want to be correct in my assumption. When Mr. Bolles files his tax return for 2002 he will be claiming as per the deduction married as a deduction but also the mortgage interest and home equity interest which he has been paying. I didn't want a problem with the division of that.
THE COURT: Okay. They declined to file jointly for 2002. They are married at the end of 2002. They declined to file jointly?
MS. DOUGLAS: We haven't discussed that. It might make some sense.
MR. QUINN: It usually makes sense. Do you usually get a refund?
MR. BOLLES: Yes.
MS. DOUGLAS: We may need an order as to the refund.
THE COURT: I will tell you what I am going to do. Get the taxes done. Come back if you need a motion for clarification. Maybe you can reach some agreement among yourselves. I know that you will need information to make that decision.
MS. DOUGLAS: My second question, the order on the stay, until the defendant vacates the marital home, the pendente lite remain in effect, my question is just the visitation which you entered today, that does go into effect immediately?
THE COURT: Frankly, I did not contemplate the interaction of the visitation schedule with the transition period.
MS. DOUGLAS: Okay.
THE COURT: The pendente lite order would appear to continue in terms of they are still living in the property, and it would appear to me that if you are both living there, until one moves out you continue doing what you have been doing. I think to inject another schedule upon the parties for however long a period of time without their agreement may create, may be problematic. I am just making my observations right now.
MS. DOUGLAS: I think I am good for now. Thank you. CT Page 2478-ak
THE COURT: I am not going to change that, but I will give you my observations.
Attorney Quinn.
MR. QUINN: Thank you, Your Honor. A few questions,
Your Honor. I did not ask it in my proposed orders that I submitted to the court, but I wondered if the Court can consider a life insurance policy on Mr. Bolles to consider the child support obligations.
THE COURT: You failed to produce evidence regarding insurability and you failed to produce any evidence of any existing policy. I wanted to enter an order regarding insurance. I am unable to under our law in the absence of evidence on these issues.
MR. QUINN: I understand, Your Honor.
THE COURT: I struggled with it.
MR. QUINN: I will leave that for another time.
THE COURT: It certainly would be in their best interest, but you didn't give me the evidence.
MR. QUINN: To the extent I need an exception, if I could take one.
THE COURT: Sure.
MR. QUINN: Your Honor, the orders were silent as to the rental income from the barn and the apartment, and I wondered —
THE COURT: Is there any present income from the barn?
MR. QUINN: No, there isn't.
THE COURT: Is there any present income from the apartment?
MR. QUINN: Not to my knowledge.
THE COURT: I am not going to enter any orders on any speculative income.
MR. QUINN: And as to the custodial accounts, your orders don't affect ownership of them? CT Page 2478-al
THE COURT: My understanding from the affidavit they are true custodial accounts for the benefit of the children. I made it clear that although they are on the plaintiff's financial affidavit, my orders do not in any way convey title to him to those accounts.
MR. QUINN: Thank you. And I wondered if the defendant might request a contingent wage execution once the child support orders take effect.
THE COURT: The child support orders are by way of immediate wage execution unless the parties execute a waiver.
MR. QUINN: Okay. Thank you.
THE COURT: I wish both parties the very best of luck. And again, I commend counsel on their representation of their clients in this matter.
Edward Domnarski, Judge CT Page 2478